**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CINDY WILLIAMS SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:20-cv-00717-CWB** |
| | ) | |
| **KILOLO KIJAKAZI,[1]** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.     Introduction and Administrative Proceedings**

Cindy Williams Smith ("Plaintiff") filed an application for Disability Insurance Benefits

under Title II of the Social Security Act and an application for Supplemental Security Income

under Title XVI of the Social Security Act—with both claims alleging a disability onset date of

January 16, 2017 and with both claims arising out of lower back pain and thyroid issues.

(Tr. 24, 58-68, 70-80, 85, 90, 196, 198, 237, 246).[2]  Plaintiff's claims were denied at the initial

level on October 6, 2017 (Tr. 85, 90), and Plaintiff requested *de novo* review by an administrative

law judge ("ALJ").  (Tr. 24, 95, 97).  The ALJ heard the case on August 22, 2019 and referred

Plaintiff for a physical consultative examination.  (Tr. 53-57).  After the consultative examination,

the ALJ conducted a supplemental hearing by video on January 28, 2020, at which time testimony

---

[1]  Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on
July 9, 2021 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2]  References to pages in the transcript are denoted by the abbreviation "Tr."

was provided by Plaintiff and a vocational expert. (Tr. 24, 39-50). The ALJ took the matter under advisement and issued a written decision on February 10, 2020 that found Plaintiff not disabled. (Tr. 24-33). The ALJ's decision contained the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2023.

2. The claimant has not engaged in substantial gainful activity since January 16, 2017, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairment: Foraminal stenosis in the lumbar spine, disc degeneration, and disc bulging. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ramps and stairs, but must never climb ladders, ropes, or scaffolds.

6. The claimant is capable of performing past relevant work as a security guard and a cashier. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 16, 2017, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 26, 27, 28, 31, 32).

On July 17, 2020, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

On appeal, Plaintiff asks the court to reverse the final decision and to award benefits or, alternatively, to remand the case for a new hearing and further consideration.  (Doc. 1 at pp 1-2; Doc. 14 at p. 11).  As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the entry of final judgment by a United States Magistrate Judge (Docs. 9 & 10), and the undersigned finds that the case is now ripe for determination pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the final decision is due to be AFFIRMED.

## II.     Standard of Review and Regulatory Framework

Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied.  *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision. *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  To make such a determination, the ALJ employs a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

---

[3]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[4]  *McDaniel* is an SSI case.  Nonetheless, the same sequence applies when evaluating claims for disability insurance benefits brought under Title II.  SSI cases arising under Title XVI therefore are appropriately cited as authority in Title II cases, and vice versa.  *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F.App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

The burden of proof rests on the claimant through step four.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four.  *Id*.  At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform.  *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  *Phillips*, 357 F.3d at 1238-39.  The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Id*.  It may contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239.  To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE").  *Id*. at 1239-40.  The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual, and combinations of the factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*. at 1240.

## III.   Issue on Appeal

Plaintiff raises one issue in this appeal—that the final decision was not supported by substantial evidence because the ALJ failed to properly consider the opinion of consultative medical examiner David Arnold, M.D. under the consistency and supportability standards. (Doc. 14 at pp. 2, 4, 11).

IV.    **Discussion**

In reaching a decision, the ALJ cited extensively to portions of the medical record that reflected a severe physical impairment: that an MRI of Plaintiff's lumbar spine confirmed moderate bilateral foraminal stenosis and severe degeneration at L5-S1 (Tr. 29, 378); that Plaintiff often reported lower back pain, particularly tenderness to palpation around the L5 through S1 region, and that the pain radiated down her legs bilaterally (Tr. 29, 402); and that Dr. David Arnold confirmed signs of reduced flexion and extension in the lumbar spine due to severe disc degeneration (Tr. 29, 433, 441).  Additionally, the ALJ noted that Plaintiff told treating sources that she used a back brace and that in September 2018 she additionally told a treating source that she had continuing lumbar pain but lacked insurance to obtain care.  (Tr. 29, 401, 405).

Despite such severity in physical impairment, however, the ALJ also noted that there was "no evidence of aggressive treatment for [Plaintiff's] lumbar disorder such as surgical intervention, or other treatment measures including, radiofrequency ablation, transcutaneous electrical nerve stimulation, or steroidal therapy injections."  (Tr. 29).  The ALJ noted that Plaintiff had been prescribed Mobic and cyclobenzaprine[5] for her back pain but that treatment notes showed she was able to exercise daily to strengthen her lower back.  (Tr. 29, 391-415).  The ALJ also noted that Plaintiff had at times advised her treating sources that her back pain had improved and that examinations at other times had showed that her lower back pain was "stable," that she ambulated normally, that she exhibited normal gait and station, and that she reported "no weakness, no numbness, no back pain [and] no arthralgias/joint pain."  (Tr. 29, 401-02).  The ALJ further noted

---

[5]  Mobic is a nonsteroidal anti-inflammatory drug used to treat pain or inflammation caused by rheumatoid arthritis and osteoarthritis in adults.  *See* https://www.drugs.com/mobic.html (last viewed September 8, 2022). "Cyclobenzaprine is used short-term to treat muscle spasms." *See* https://www.webmd.com/drugs/2/drug-8888-8087/cyclobenzaprine-oral/cyclobenzaprine-oral/details (last viewed September 8, 2022).

that Plaintiff's function report indicated that she was able to perform her personal care tasks without issue, as well as carry out "light" household chores such as cleaning, laundry, ironing, and other tasks.  (Tr. 29, 262-63).

Based on all of the medical record as a whole, the ALJ concluded that Plaintiff "has not experienced persistent issues related to her physical impairment, which severely affect her capacity to perform all forms of work duties."  (Tr. 29).

> When reviewed in tandem, the contemporaneous medical evidence shows limited treatment and, while she exhibits some limitations including physical and exertional constraints, she is able to perform certain tasks with appropriate treatment and medical management. Moreover, while financial constraints may make medical intervention and compliance more difficult, a lack of health insurance does not equate to a finding of disability. Moreover, the evidence reveals that the claimant did not exhaust all efforts to seek treatment with normal visits to free or subsidized clinics, and personal denial of emergency room visits or hospitalizations. Of importance, the claimant testified that she is not presently receiving treatment for her back impairment. (Hearing Testimony). **_Because there lacks evidence supporting the degree of the limitations alleged by the claimant in this case, the undersigned must find the claimant is not disabled_**.

(Tr. 30, 45, 401-02) (emphasis added).[6]

Because Plaintiff's claim was filed on July 31, 2017 (Tr. 24), review must be guided by the revised regulations applicable to claims filed on or after March 27, 2017.  *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  For such claims, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own]

---

[6]  The court notes that "the mere existence of . . . impairments does not reveal the extent to which they limit [a claimant's] ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005); *see Hutchinson v. Astrue*, 408 F.App'x 324, 326 (11th Cir. 2011) ("[P]roof of the mere existence of impairments does not prove the extent to which they limit a claimant's ability to work.").  Here, the ALJ acknowledged that Plaintiff's lumbar impairments were severe and assessed limitations in the RFC to accommodate those impairments based on consideration of the entire record.

medical sources." 20 C.F.R. §§ 404.1520c(a) & 416.920c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022). Instead, the "new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources." *Simon v. Kijakazi*, No. 8:20-CV-1650-SPF, 2021 WL 4237618, at *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. §§ 404.1520c(a) & 416.920c(a)).

Stated differently, "[the agency] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(a) & (c). "The most important factors . . . [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a); *Simon*, 2021 WL 4237618, at *3. Therefore, "the ALJ must explain how he or she considered the supportability and consistency factors." *Wynn v. Kijakazi*, No. 8:20-CV-2862, 2022 WL 1115296, at *4 (M.D. Fla. Apr. 14, 2022). "The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors." *Nix v. Saul*, No. 4:20-CV-00790-RDP, 2021 WL 3089309, at *6 (N.D. Ala. July 22, 2021) (citing 20 C.F.R. § 404.1520c(a)-(c)). "The ALJ may but is not required to explain how he considered the other remaining factors." *Id*. (citing 20 C.F.R. § 404.1520c(b)(2)). And the ALJ also is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d).

It is clear that the ALJ considered the September 25, 2019 opinion of David Arnold, M.D., the consultative physician who examined Plaintiff at the ALJ's request, as part of the RFC analysis. (Tr. 57, 430-34). Dr. Arnold noted that Plaintiff had an MRI performed in 2017 showing

moderate/severe degeneration in the L5/S1 disc with foraminal stenosis and that she had been treated conservatively.  (Tr. 431, 434).  An x-ray taken on the date of the consultative examination likewise showed severe and chronic disc degeneration at L5-S1.  (Tr. 441).  Dr. Arnold assessed Plaintiff with chronic lower lumbar radiculopathy and polyarthralgia—stating that the "ongoing back pain has reduced her functional abilities for daily activities" and that "the persistent symptoms in [Plaintiff's] back [were] most likely related to her disc disease."  (Tr. 434).

Dr. Arnold thus opined that, due to Plaintiff's "disc disease," Plaintiff could only occasionally lift and carry up to 20 pounds and could never carry or lift more than 20 pounds. (Tr. 435).  Dr. Arnold also opined that Plaintiff could only sit, stand, and walk for one hour each at a time, and only up to two hours each out of an eight-hour workday.  (Tr. 436). The ALJ, however, found that those opinions were "not persuasive" in that they were "not consistent with or supported by the objective medical evidence."  (Tr. 30).  Specifically, the ALJ gave the following explanation as to how Dr. Arnold's opinions appeared inconsistent with, and insufficiently supported by, other medical evidence in the record:

> Although Dr. Arnold did conduct a radiological study showing degenerative disease, he pointed to no other evidence to support finding the claimant is unable to perform all physical or exertional duties; particularly, after finding her able to lift and carry at the light exertional level. In fact, treatment notes showed that the claimant ambulates independently (Ex. 8F/11), and exhibited normal gait and station. (Ex. 8F/12). Additionally, she advised treating sources that her back pain had improved and examinations showed that her lower back pain was "stable." (Ex. 8F/11, 21 "she reports no weakness, no numbness, no back pain no arthralgias/joint pain").

(Tr. 30).

The final decision additionally reflects that the ALJ considered the October 2017 findings by the State non-examining medical consultant, Dr. George W. Hall, who opined that Plaintiff was capable of performing work at the light exertional level with some postural restrictions.  (Tr. 30,

65-67, 77-79).  The ALJ found Dr. Hall's opinion persuasive on the basis that it was "consistent

with and supported by the objective medical evidence":

> As discussed above, treatment notes showed that the claimant advised treating
> sources that her back pain had improved and examinations showed that her lower
> back pain was "stable." (Ex. 8F/ 11, 21 "she reports no weakness, no numbness, no
> back pain no arthralgias/joint pain").  In addition, the claimant ambulates
> independently (Ex. 8F/ 11), and exhibited normal gait and station. (Ex. 8F/ 12).
> Likewise, the claimant also indicated that she is able to perform "light" household
> chores, including cleaning, laundry, ironing, and other tasks, all of which would
> support the light duty restrictions identified by the Agency consultant. (Ex. 5E).

(Tr. 30; *see also* Tr. 262-63, 401-02, 411).  The ALJ ultimately concluded that Plaintiff was limited

to performing light work,[7] except that she could only occasionally climb ramps and stairs but must

never climb ladders, ropes, or scaffolds.  (Tr. 28).

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be

shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to

the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016)

(citations omitted).  However, an ALJ "is not required to specifically address every aspect of an

opinion or every piece of evidence in the record."  *Coley v. Comm'r of Soc. Sec.*, 771 F.App'x 913,

917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid

requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as

the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court . .

.] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation

omitted).

---

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying
of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in
this category when it requires a good deal of walking or standing, or when it involves sitting most
of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b) &
416.967(b).

Applying the revised regulations and reviewing the medical record in its entirety, the court finds that substantial evidence supports the ALJ's decision. Although the record does reflect that Plaintiff's lumbar impairments limit her functional ability, the record also reflects that Plaintiff is able to perform her personal care tasks without issue, as well as "light" household chores, including cleaning, laundry, ironing, and other tasks. (Tr. 29, 262-63). *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (stating that an ALJ should consider a claimant's daily activities in evaluating the limiting effects of her impairments). The record also reflects that Plaintiff has only received conservative treatment. (Tr. 29-30, 401-02). *See Bernard v. Comm'r, Soc. Sec. Admin.*, No. 4:20-CV-01559, 2022 WL 983168, at *9 (N.D. Ala. Mar. 30, 2022) ("'A doctor's conservative medical treatment for a particular condition tends to negate a claim of disability.'") (quoting *Sheldon v. Astrue*, 268 F.App'x 871, 872 (11th Cir. 2008)); *Chatham v. Comm'r of Soc. Sec.*, 764 F.App'x 864, 869 (11th Cir. 2019); 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (The ALJ "will consider . . . [t]he type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms[.]"). Further, examinations by Plaintiff's treating sources showed during key times that she had reported her lower back pain as "stable," that she had ambulated normally, and that she had exhibited normal gait and station. (Tr. 29-30). And although Plaintiff lacks medical insurance, the record reflects that she did not exhaust efforts to seek treatment with free or subsidized clinics, emergency room visits, or other available care. (Tr. 30, 45-46, 402). *See also Stanley v. Berryhill*, No. 8:16-CV-3344-T-27TGW, 2017 WL 8893864, at *8 (M.D. Fla. Dec. 19, 2017), *report and recommendation adopted*, No. 8:16-CV-3344-T-27TGW, 2018 WL 1250870 (M.D. Fla. Mar. 12, 2018) ("The law judge's point is that there is insufficient medical evidence of disability, and the plaintiff's lack of health insurance does not excuse his failure to meet his evidentiary burden.").

Because Dr. Arnold's examination notes reflect that he also reviewed "[a]n MRI included within her records" that "show[ed] disc disease with foraminal encroachment at L5/S1," Plaintiff contends that the ALJ falsely stated that Dr. Arnold "pointed to no other evidence to support [a] finding [that] the claimant is unable to perform all physical or exertional duties; particularly, after finding her able to lift and carry at the light exertional level" except for the x-ray of her lumbar spine. (Doc. 14 at pp. 9-10, citing Tr. 30, 434). Although Dr. Arnold indeed mentioned Plaintiff's MRI in his examination notes (Tr. 434), the ALJ was correct that Dr. Arnold did not reference the results of the MRI or other medical evidence as a basis for the lift and carry limitations included in his opinion. (Tr. 435-36). Not only that, the MRI does not provide any materially different information than the x-ray as to the presence of degenerative disc disease (Tr. 29, 30, 378, 434, 441), and diagnosis alone does not equate to limitations. *Wind v. Barnhart*, 133 F.App'x 684, 690 (11th Cir. 2005) ("However, a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work."). It is also clear that the ALJ independently considered Plaintiff's MRI results in concluding that Dr. Arnold's opinion was inconsistent with and unsupported by other medical evidence. (Tr. 29). For these reasons, any alleged error in failing to note specifically that Dr. Arnold reviewed Plaintiff's MRI was harmless.

Plaintiff further argues that the ALJ's characterization of Dr. Arnold's opinion as limiting Plaintiff to lifting and carrying "at the light exertional level" is inaccurate, as Dr. Arnold's opinion precludes any level of lifting or carrying on a frequent or continuous basis. (Doc. 14 at p. 10, citing Tr. 30, 435). The Commissioner concedes that Dr. Arnold's opinion with respect to lifting and carrying does not perfectly align with the definition of light work, 20 C.F.R. §§ 404.1567(b) & 416.967(b), but contends that such misstatement was harmless as the ALJ did not rely on

Dr. Arnold's opinion to support the RFC determination that limited Plaintiff to light work.  (Doc. 17 at p. 17).  The court agrees that any error was harmless, as a review of the decision reflects that the ALJ considered the entire record and formulated an RFC that was consistent with the treatment notes, Plaintiff's daily activities, and of the opinion of Dr. Hall.  *See Bradley on behalf of Bradley v. Kijakazi*, No. 3:21CV681, 2022 WL 3031229, at *5 (N.D. Fla. July 15, 2022), *report and recommendation adopted*, No. 3:21CV681, 2022 WL 3030533 (N.D. Fla. Aug. 1, 2022) ("[T]he ALJ's misstatement does not require reversal because the ALJ considered [plaintiff's] condition as a whole and formulated an RFC that was consistent with the evidence and [the State agency doctor's] opinion", citing 20 C.F.R. § 404.1513a(b)(1): "State agency medical . . . consultants are highly qualified and experts in Social Security disability evaluation."); *accord Thompkins v. Kijakazi*,  No. 2:21-CV-216, 2022 WL 2517185, at *6 (M.D. Ala. July 6, 2022); 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (stating that an ALJ should consider a claimant's daily activities in evaluating the limiting effects of his or her impairments).[8]

Finally, Plaintiff challenges the ALJ's reliance on treatment records from December 2017 in which her lower back pain was reported as "stable" rather than citing her more recent treatment record from September 2018 that notes tenderness to palpation in the L5-S1 region and pain radiating into the bilateral legs.  (Doc. 14 at p. 10; Tr. 30, 401-02).  However, the ALJ did in fact consider that Plaintiff had reported continuing lumbar pain in September 2018.  (Tr. 29).  Again,

---

[8] The court expressly notes that "the task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F.App'x 941, 945 (11th Cir. 2016); *Beegle v. Soc. Sec. Admin., Com'r*, 482 F.App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Rodriguez v. Comm'r of Soc. Sec.*, No. 618CV503ORL18TBS, 2018 WL 7113871, at *2 (M.D. Fla. Dec. 27, 2018), *report and recommendation adopted*, No. 618CV503ORL18TBS, 2019 WL 316051 (M.D. Fla. Jan. 24, 2019) ("[T]here is no requirement that an ALJ base an RFC finding on a medical source's opinion.").

it is clear that the ALJ considered the entire record when determining Plaintiff's RFC and that the ALJ cited the treatment records, Plaintiff's daily activities, and Dr. Hall's opinion in doing so.  *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (noting that reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder).

Plaintiff "'must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion.'"  *Thompkins*, 2022 WL 2517185, at *7 (quoting *Sims v. Comm'r of Soc. Sec.*, 706 F.App'x 595, 604 (11th Cir. 2017) (*per curiam*)); *Lanier v. Colvin*, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) ("The fact that Plaintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.") (citing *Crawford*, 363 F.3d at 1158-59).  Put most simply, "[t]o the extent Plaintiff disagrees with the ALJ's interpretation of that evidence, that is not a ground for remand." *Horne v. Comm'r of Soc. Sec.*, No. 2:20-CV-181-JLB-MRM, 2021 WL 3023679, at *5 (M.D. Fla. June 28, 2021), *report and recommendation adopted*, No. 2:20-CV-181-JLB-MRM, 2021 WL 3022727 (M.D. Fla. July 16, 2021) (citing *Sarria v. Comm'r of Soc. Sec.*, 579 F.App'x 722, 724 (11th Cir. 2014)); *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.' 'If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it.'") (citations omitted).

## V.    Conclusion

For these reasons, and after carefully and independently reviewing the record, the court concludes that the Commissioner's decision is due to be AFFIRMED.

A separate judgment will issue.

DONE this the 5th day of October 2022.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**